UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JACQUELYN A. VANDEHEY and
MICHELLE L. O'LAIRE, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

    v.                                                                                 Case No. 18-C-144

ASSET RECOVERY SOLUTIONS, LLC,
VELOCITY INVESTMENTS LLC, and
JOHN AND JANE DOES 1 THROUGH 25,

        Defendants.

## DECISION AND ORDER

        Plaintiffs Jacquelyn A. Vandehey and Michelle L. O'Laire, on behalf of themselves and all others similarly situated, allege that Defendants Asset Recovery Solutions, LLC (ARS), Velocity Investments LLC (Velocity), and John and Jane Does Numbers 1 through 25 violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, by sending letters to Plaintiffs regarding consumer loans on which they had defaulted. The letters stated that "the account balance may periodically increase due to the addition of accrued interest." ECF Nos. 1-1, 1-2. Because the loans had been "charged off" by the original creditor and were no longer accruing interest, Plaintiffs claim that the letters are false, misleading, and deceptive. Although the Seventh Circuit had previously rejected a similar argument as "downright frivolous," *Taylor v. Cavalry Inv., LLC*, 365 F.3d 572, 575 (7th Cir. 2004) ("The plaintiffs have an alternative claim that is downright frivolous—that the statement we quoted from the dunning letter is false, and so violated 15 U.S.C. § 1692e, because two of the creditors did not add interest. The letter didn't say they would, only that

they might."), the argument finds strong support in more recent decisions. *See, e.g.*, *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (holding that letter stating that "because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater" is materially false, misleading, and deceptive where late charges and other charges cannot be lawfully imposed); *but see also Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765–66 (7th Cir. 2018) ("Similarly here, it is not misleading to say that a debtor who settles a debt may incur a tax liability. The use of the word 'may' signals only that tax consequences are possible in the case of some debtors, not that tax consequences are possible or likely (much less certain) in *this particular debtor's circumstances*.").

In any event, presently before the court in this case is Defendants' motion to compel arbitration and Plaintiffs' motion for class certification. Unfortunately, the record is insufficiently developed to allow that court to definitively conclude that Plaintiffs are bound by the terms of the notes they allegedly executed or that Defendants are entitled to enforce those provisions. The court will therefore withhold ruling and direct the parties to supplement the record, either in writing or at a hearing. Assuming the record, as supplemented, establishes Plaintiffs executed the notes and Velocity purchased them, Defendants are entitled to enforce the provisions, subject to Plaintiffs' affirmative defense that the arbitration provision is unenforceable as unconscionable under Wisconsin law. Pending a determination of Defendants' motion to compel arbitration, Plaintiffs' motion for class certification will be held in abeyance.

## BACKGROUND

Plaintiffs' claims arise out of letters they received from ARS, which sought to collect a debt on behalf of Velocity, that listed past-due balances and stated in part, "the account balance may

periodically increase due to the addition of accrued interest." ECF Nos. 1-1, 1-2. As noted above, Plaintiffs assert that this statement is false, deceptive, and misleading because, in fact, the balances are static and Velocity does not add or intend to add interest to the debts ARS seeks to recover on its behalf. Plaintiffs filed a motion for class certification seeking to represent Wisconsin residents who received similar letters from ARS mailed between January 29, 2017, and February 19, 2018, that contained the phrase, "the account balance may periodically increase due to the addition of accrued interest."

Shortly after Plaintiffs filed a motion for class certification, ARS and Velocity filed a motion to compel arbitration, claiming that Vandehey and O'Laire executed promissory notes containing arbitration and class action provisions. These notes were for personal loans from WebBank, who sold them to Prosper Funding, LLC (Prosper), who then in turn sold the debts to Velocity. *See* ECF Nos. 19-1—19-6, 32-5—32. After Velocity purchased Vandehey and O'Laire's debts, Galaxy Capital Recoveries, LLC (Galaxy), a company that serviced Velocity's debts, authorized ARS to service Vandehey and O'Laire's debts.

The notes giving rise to the debts provide that all claims "arising from or related to [the notes] . . . shall be resolved, upon the election of you or me, by binding arbitration." ECF No. 19-1 at ¶ 18(a)(iii), (b); ECF No. 19-2 at ¶ 18(a)(iii), (b). The notes further provide that "arbitration under this arbitration agreement will take place on an individual basis; class arbitrations and class actions are not permitted" and that "YOU AND I AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN OUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE

3

PROCEEDING." ECF No. 19-1 at ¶ 18(b), (f); ECF No. 19-2 at ¶ 18(b), (f). Paragraph 18(h) states, in bold and all caps:

> **YOU AND I AGREE THAT, BY ENTERING INTO THIS NOTE, THE PARTIES ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION. YOU AND I ACKNOWLEDGE THAT ARBITRATION WILL LIMIT OUR LEGAL RIGHTS, INCLUDING THE RIGHT TO PARTICIPATE IN A CLASS ACTION, THE RIGHT TO A JURY TRIAL, THE RIGHT TO CONDUCT FULL DISCOVERY, AND THE RIGHT TO APPEAL (EXCEPT AS PERMITTED IN PARAGRAPH (e) OR UNDER THE FEDERAL ARBITRATION ACT).**

ECF No. 19-1 at ¶ 18(h); ECF No. 19-2 at ¶ 18(h). The promissory notes define WebBank as itself, any person servicing the notes, any subsequent holders of the notes or any interest in the notes, any person servicing the notes for a subsequent holder of the notes, and each of their respective parents, subsidiaries, affiliates, predecessors, successors, and assigns, as well as the officers, directors, and employees of each of them. ECF No. 19-1 at ¶ 18(a)(ii); ECF No. 19-2 at ¶ 18(a)(ii). Although the notes provided Vandehey and O'Laire the option of rejecting the arbitration and class action provisions within thirty days of the date the notes were made, ECF No. 19-1 at ¶ 18(I); ECF No. 19-2 at ¶ 18(i), neither did so.

Plaintiffs filed this action on January 28, 2018. On June 4, 2018, Defendants provided Plaintiffs' counsel with copies of Vandehey and O'Laire's promissory notes. The same day, Plaintiffs filed a motion for class certification. On June 12, 2018, ALS and Velocity sent notice of their election to have Vandehey and O'Laire's claims proceed in arbitration. On June 19, 2018, Defendants filed a motion to compel arbitration.

**ANALYSIS**

Defendants' opposition to Plaintiffs' motion for class certification rests entirely on the validity of the arbitration and class action waiver provisions in Vandehey and O'Laire's promissory notes. Because the success of Plaintiffs' motion for class certification rises or falls on the disposition of Defendants' motion to compel arbitration, the court will first address the motion to compel arbitration. Before addressing the merits of the motion to compel arbitration, however, the court must address Plaintiffs' evidentiary objections.

**A. Admissibility of Loan and Sale Documents**

Plaintiffs first challenge the admissibility of the loan and sale documents attached to Defendants' motion to compel arbitration on hearsay grounds, arguing that the declaration filed in support of their motion is insufficient to show that the referenced documents constitute business records under Rule 803(6) of Federal Rules of Evidence. Plaintiffs contend that because the loan and sale documents are inadmissible hearsay, Defendants have failed to establish that the promissory notes that gave rise to their debts contained arbitration clauses and class action waivers. Plaintiffs also contend that admissible evidence fails to establish that Defendants are transferees of the notes with authority to enforce whatever provisions they may contain.

The "loan and sale documents" on which Defendants' motion to compel arbitration is based do not all constitute hearsay. The documents at issue consist of: (1) copies of the promissory notes Plaintiffs gave in return for the loans they received from WebBank; (2) the Bills of Sale for the assignment of "all rights, title and interest in and to" the loans to Velocity; (4) the Borrower Registration Agreements Plaintiffs entered into with Prosper as a condition of the loans; (5) the Terms of Use of the Prosper Funding website; and (6) the Certificates of Loan Sales reflecting the

sales of Plaintiffs' loans by WebBank to Prosper or its affiliate Prosper Marketplace, Inc. (PMI). The notes, the Borrower Registration Agreements, and the Terms of Use clearly do not constitute hearsay.

Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). A statement is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as such." Fed. R. Evid. 801(a). In other words, hearsay does not encompass all extrajudicial utterances or writings but only those offered for the purpose of proving the truth of matters asserted in the statement. Among the more common types of out-of-court writings or utterances that do not fall within the definition of hearsay are what are sometimes called verbal acts. 2 MCCORMICK ON EVID. § 249 (7th ed.). These are utterances, either written or oral, that are offered as evidence of their legal effect. Notes and contracts fall within the definition of verbal acts. As McComick explains, for example, "[w]hen a suit is brought for breach of a written contract, no one would think to object that a writing offered as evidence of the contract is hearsay." *Id.* A contract is not hearsay because it is not offered to prove the truth of the matter asserted; rather it is offered to show the legal effect of the agreement between the parties. As the Fifth Circuit explained in *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*:

> Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay. A contract is a verbal act. It has legal reality independent of the truth of any statement contained in it. Under the objective theory of contracts, the fact that two parties signed a contract is enough to create legal rights, whatever the signatories might have been thinking when they signed it. The admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection. To introduce a contract, a party need only authenticate it.

6

12 F.3d 527, 540 (5th Cir. 1994); *see also Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) ("Statements that constitute verbal acts (e.g., words of contract or slander) are not hearsay because they are not offered for their truth."). Thus, Plaintiffs' objection on grounds of hearsay as to the notes, the Borrower Registration Agreements, and the Terms of Use of the Proper website are unavailing. The question instead is whether the notes and contracts have been properly authenticated.

Rule 901 of the Federal Rules of Evidence, which governs the authentication and identification of evidence, states as a general rule: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Among the types of evidence that can satisfy the requirement of authentication are "[t]estimony that an item is what it is claimed to be," Fed. R. Evid. 901(b)(1), and "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). "Although section 901(b) illustrates various methods of authentication, these methods are not intended to be the only methods of authentication. [Rule] 901(a) specifies only that the requirement of authentication is satisfied when there is evidence sufficient to support a finding that the matter is what the proponent claims it is." *Bury v. Marietta Dodge*, 692 F.2d 1335, 1338 (11th Cir. 1982).

In this case, Defendants have filed the Declaration of W. Peter Ragan, Jr., Velocity's Vice President, to identify and authenticate the various loan and sales documents they have attached to their Memorandum and Reply Memorandum in support of their motion to compel arbitration. Ragan states that "Velocity purchased the loans issued to Jacquelyn A. Vandehey and Michelle L.

O'Laire by WebBank (and later sold to Prosper Funding, LLC) on November 22, 2016, and January 23, 2017, respectively." ECF No. 32-7 at ¶ 3. "As part of that purchase," Ragan states, "Velocity received documents specific to these loans" and that he has "access to the business records concerning these loans that are in the possession of Velocity." *Id.* Ragan identifies Exhibits A and B attached to the motion to compel arbitration as "true and correct copies of the documents Velocity received from the purchase of the loans from Prosper Funding, LLC as part of the transaction." *Id.* at ¶ 4. Ragan goes on to identify Exhibits C and E as the certificates of loan sale documenting the sale of Plaintiffs' loans to Prosper by WebBank, and Exhibits D and F as the bills of sale documenting the sale of Plaintiffs' loans by Prosper to Velocity. *Id.* at ¶¶ 5, 6. Ragan then identifies Exhibits K and L as the borrower registration agreements from Plaintiffs' loan files received from Prosper, and Exhibits M and N as the terms of use from Plaintiffs' loan files. *Id.* at ¶¶ 7, 8. Finally, Ragan identifies Exhibits O and P as the complete lists of loan accounts, including those of Plaintiffs, for the loan files Velocity purchased from Prosper. *Id.* at ¶ 9. Ragan states that all of the foregoing documents are maintained by Velocity in the course of its regularly conducted business activities and are the types of documents that are regularly maintained and relied upon by Velocity to conduct its business.

  The case is complicated by the fact that the loans were generated electronically at an internet website operated by Prosper, and while much, if not most, commercial activity is conducted electronically today, traditional rules governing the admissibility of evidence relating to such activity do not easily apply. *See* Jay M. Zittler, J.D., Annotation, *Construction and Application of Electronic Signatures in Global and National Commerce Act (E-Sign Act), 15 U.S.C.A. §§ 7001 to 7006*, 29 A.L.R. Fed. 519 (2008). The bottom line is that under the E-Sign Act, "a signature,

contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form or an electronic signature was used in its formation . . . ." *Id.* And while Plaintiffs have raised a number of objections to the admissibility of the evidence on which Defendants rely for their motion, Defendants have presented evidence from which it appears that Plaintiffs obtained loans for which they authorized notes to be given that included the arbitration provisions and class action waivers Defendants seek now to enforce.

According to the Borrower Registration Agreement, Prosper operates the Prosper marketplace, which is an online credit platform (the Platform) that offers, among other things, access to unsecured personal loans in the form of a promissory note. All loans originated through the Platform are made by WebBank, a Utah-chartered industrial bank. ECF No. 32-1 at 2. The Platform connects applicants who wish to obtain loans with investor members who wish to help fund them. To obtain a loan, an applicant or borrower member must submit a loan listing through the Platform. *Id.* A listing is a request by the applicant for a loan in the amount and at the interest rate specified in the listing. The applicant must disclose her annual income, occupation, and employment status. Prosper also includes in the listing information from the applicant's credit report. *Id.* at 3.

In order for the listing to result in a loan, the applicant must receive aggregate funding in commitments from Prosper investor members that equal or exceed the minimum funding amount applicable to the listing. If the listing receives sufficient commitments to fund, WebBank originates a loan to the applicant in an amount equal to the total amount of those commitments. If the applicant receives a loan, she must pay WebBank a non-refundable origination fee. *Id.* The loan

is then to be paid through automatic withdrawals from the applicant's bank accounts or by manual payments by the borrower. *Id.* at 6–7.

The Borrower Registration Agreement includes the applicant's express consent to electronic transactions and disclosures, as set forth in the Terms and Conditions of Use, which are incorporated by reference. The Agreement states in bold letters: "You expressly agree that each of (a) this Agreement and (b) any Promissory Note in the form set forth on the attached Exhibit A that we sign on your behalf, may comprise a 'transferrable record' for all purposes under the Electronic Signatures in Global and National Commerce Act and the Uniform Electronic Transactions Act." *Id.* at 11. Finally, the Borrower Registration Agreement states that if the applicant's listing receives sufficient investor commitments to fund, and the applicant has not withdrawn her listing prior to expiration of the listing period, the applicant "hereby authorizes each of Prosper and PMI to act as your Attorney-in-Fact to execute a Promissory Note in the form set forth on the attached Exhibit A on your behalf in favor of [Web]Bank." *Id.*

In order to form a contract, both parties must assent to the terms of the agreement. Traditionally, such assent is evidenced by the parties physically signing a document or writing setting forth the terms of the agreement. The maker of a note also traditionally signs it to evidence his undertaking to pay. But that was before the advent of the computer and electronic communications. Under the Electronic Signatures in Global and National Commerce Act, in all transactions in or affecting interstate or foreign commerce, a contract or other record relating to the transaction shall not be denied legal effect merely because it is in electronic form, and a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation. 15 U.S.C. § 7001(a). The

10

Act defines "electronic signature" as "an electric sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record." § 7006(5). If in fact Plaintiffs accessed Prosper's online credit platform, created a listing for a loan, and completed the process for obtaining a loan from WebBank, then the notes representing the loans they obtained thereby would be presumptively valid and enforceable against them.

Both Vandehey and O'Laire have submitted declarations, however, in which they deny that they signed the notes that Defendants have offered in evidence. ECF Nos. 28–29. Instead, they state that the notes were signed by PMI as Attorney-in-Fact for them. Plaintiffs also deny that they signed a power of attorney appointing PMI to take any action for them and that they are unaware of doing anything that would have given Prosper Marketplace permission to act on their behalf. Plaintiffs further assert that even if Prosper Marketplace thought it could act on their behalf, it never explained to them that they could be compelled to arbitrate with Prosper Marketplace or any other company, or that it had a right to opt out of the arbitration provision. ECF No. 28 at ¶ 5; ECF No. 29 at ¶ 5.

It is unclear what Plaintiffs mean in their denials of having signed the notes or authorized Prosper Marketplace to act as their attorney-in-fact in signing the notes on their behalf. Do they mean that they did not physically affix their signature to the notes or a document appointing Prosper Marketplace their attorney-in-fact and authorizing it to sign the notes on their behalf? If that is all they are saying, they are playing games since it is clear from the circumstances surrounding the loans that any signatures would have been electronic, not physical. The same is true of their statement that they are unaware of doing anything that would have given Prosper Marketplace

permission to act on their behalf. Do they mean that they never obtained a loan through the Prosper Marketplace? Or are they saying that they did obtain the loans reflected in the notes, but did not read, or do not now recall, the Borrower Registration Agreements and Terms of Use they were apparently required to electronically sign as a condition of obtaining the loans? Given the equivocal statements in their respective declarations, it is unclear whether Plaintiffs are denying the validity and enforceability of the notes because they did not lawfully assent to the terms, whether or not they read those terms, or whether they are simply saying they didn't physically sign any notes or powers of attorney, which under the circumstances is irrelevant. Civil litigation is too expensive to allow it to get bogged down in such obfuscation. The court will therefore hold an evidentiary hearing on Defendants' motion to compel arbitration to clarify the record unless the parties are able to do so by supplementing the record.

Plaintiffs also challenge Defendants' claim that they acquired the right to assert any rights under the arbitration and class action waiver provisions of the notes that might exist. In other words, they challenge the sales documents Ragan identifies in his declaration. Ragan's declaration would seem sufficient to authenticate some of the sales documents as records kept in the course of a regularly conducted business within the meaning of Rule 803(6). Velocity is engaged in the business of purchasing and collecting outstanding debts, and Ragan, as its Vice President, would have knowledge of the records it keeps concerning debts the company purchases. The two Bills of Sale marked as Exhibits D and F indicate that in January of 2017, "[f]or value received and pursuant to the terms and conditions of the Purchase and Sale Agreement dated July 21, 2016," Prosper assigned "all rights, title and interest in and to those charged-off loans and/or related participation interests and all related receivables, judgments or evidences of debt described in Exhibit I attached

12

hereto and made part hereof for all purposes to Velocity Investments, LLC (Purchaser)." ECF Nos. 19-4, 19-6. The earlier Bill of Sale dated January 3, 2017, was for 2,202 accounts having a total unpaid balance of $24,153,778.92 as of a closing date of November 22, 2016. ECF No. 19-4. The second Bill of Sale, dated January 23, 2017, was for 1,802 accounts with an unpaid balance of $19,416,179.60 as of the closing date of January 23, 2017. ECF No. 19-6. Ragan explains in his declaration that Exhibits O and P are the complete lists of the loan accounts that WebBank transferred to Prosper and that Velocity purchased from Prosper. The Vandehey and O'Laire account numbers are among the thousands of account numbers listed in the two documents. ECF Nos. 32-5, 32-6. From this it would appear that Velocity purchased Plaintiffs' loan accounts from Prosper.

The evidence is less clear concerning Proper's interest in the loans. Prosper's interest in the loans is evidenced by the Certificates of Loan Sale signed by Kelly Barnett, the President of WebBank, certifying that each of the loans identified by loan number on the attached Exhibit A was originated by WebBank, serviced by Prosper or its affiliate PMI, and that WebBank then "transferred, assigned, and conveyed to Prosper Funding LLC and its successors and permitted assigns, all right, title and interest [WebBank] held in each Asset . . . ." ECF Nos. 19-3, 19-5. The Certificates of Loan Sale, according to Ragan, are copies of documents Velocity received from Prosper as part of the loan purchase transaction. But as Plaintiffs point out, the "certificates" are not in the form of a sworn affidavit or declaration, and they do not constitute contemporaneous records of the business of WebBank. Since it is necessary to clarify the record as to whether Plaintiffs electronically signed the notes and/or appointment of Prosper Marketplace as their

13

attorney-in-fact, Defendants should use the same opportunity to more clearly substantiate the chain of title to the loans at issue.

Even aside from these evidentiary issues, Plaintiffs contend that the arbitration provisions are unenforceable under the circumstances of this case. Since if Plaintiffs are right, it would render the evidentiary issues moot, I turn to Plaintiffs' more substantive arguments in opposition to Defendants' motion to compel arbitration.

**B. Enforceability of Arbitration Provision**

The Federal Arbitration Act (FAA) embodies a national policy favoring arbitration, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), and "requires courts to place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017) (quoting *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 465 (2015)); 9 U.S.C. § 2. Under the FAA, a court must compel arbitration "if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017)). "[O]nce an enforceable arbitration contract is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration." *Scheurer*, 863 F.3d at 752.

Assuming PMI's electronic signatures as attorney-in-fact for Plaintiffs are valid and enforceable, Plaintiffs are bound by the terms of the notes PMI signed on their behalf. Plaintiffs argue, however, that it is clear both Defendants are not entitled to the benefit of the arbitration clause. Plaintiffs argue that the court can "readily dispose of" Defendants' motion to compel

14

arbitration as it relates to the claims against ARS because ARS does not fall within the definition of those covered by the arbitration clause.

Paragraph 18(a)(ii) of the note defines those whose disputes with the borrowers are subject to arbitration as: "WebBank, any person servicing this Note for WebBank, any subsequent holders of this Note or any interest in this Note, any person servicing the Note for such subsequent holder of this Note, and each of their respective parents, subsidiaries, affiliates, predecessors, successors, and assigns, as well as the officers, directors, and employees of each of them." ECF No. 19-1 at 3. This definition is broad enough to encompass ARS. Ragan states in his supplemental declaration that after Velocity purchased the Vandehey and O'Laire loans, Galaxy, a company that services the debts purchased by Velocity, authorized ARS to service the debts purchased by Velocity. ECF No. 32-7 at ¶ 10. Thus, ARS was servicing the notes for Velocity, a subsequent holder of the notes. As such, both Velocity and ARS fall within the definition of those entitled to enforce the arbitration provision to resolve Plaintiffs' disputes.

Plaintiffs also dispute whether Velocity is a subsequent holder of the notes. Plaintiffs argue that Defendants have failed to prove a transfer of Vandehey and O'Laire's specific loans to Velocity. They contend that the exhibits Defendants have offered fail to establish that any note was negotiated or that any interest in the loans was assigned or sold to Velocity. But as noted above, the Bills of Sale, Exhibits D and F, show that Prosper sold Plaintiffs' accounts to Velocity. More specifically, Prosper, for value received, assigned "all rights, title and interest in and to those certain charged-off loans and/or related participation interests and all related receivables, judgments or evidences of debt described in Exhibit I attached hereto and made a part hereof for all purposes to Velocity Investments, LLC." ECF No. 19-4 at 2; ECF No. 19-6 at 2. Assuming, as Ragan asserts

15

in his declaration, that WebBank sold its interest in Plaintiffs' loans to Prosper, the Bills of Sale clearly indicate that the loan accounts, and "evidences of debt" were transferred to Velocity. "Evidences of debt" would presumably include the notes, though Defendants may wish to make this more clear when they supplement the record. Velocity would therefore be considered a holder of the notes Plaintiffs gave to WebBank. As such, Velocity would be entitled to enforce the arbitration provision.

Plaintiffs next contend that Defendants waived their right to arbitrate any dispute by failing to assert it earlier in the proceeding. Waiver of a right to enforce arbitration can be either explicit or inferred from a party's actions. *Kawasaki Heavy Indus., Ltd. v. Bombadier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). There was no explicit waiver here. To find implied waiver, a court must consider the totality of the circumstances and determine that a party acted inconsistently with the right to arbitrate. *Id.* Relevant factors to consider in this analysis include the allegedly defaulting party's diligence or lack thereof, delay in requesting arbitration, and participation in discovery, as well as prejudice to the party asserting waiver. *Id.* (citing *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589–91 (7th Cir. 1992)). Diligence and prejudice are weighed most heavily. *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995).

Plaintiffs assert that Defendants failed to raise arbitration as an affirmative defense in their answers and failed to mention arbitration in the Rule 26(f) planning report and the Rule 16 conference. Plaintiffs also note that Defendants waited five months after service of the complaint to file a motion to compel arbitration, which evidences a lack of diligence. This delay in invoking arbitration, Plaintiffs contend, prejudiced them because of the time they spent litigating the case,

16

including drafting the Rule 26(f) plan, participating in the Rule 16 conference, and filing a motion for class certification. Defendants counter that their five-month delay in filing their motion to compel arbitration is modest and that Defendants' counsel raised the issue of arbitration with Plaintiffs' counsel as soon as they were aware of it and before serving any discovery responses. Defendants note that discovery in this case has been minimal and that Plaintiffs have not been prejudiced by the five-month wait between the answer and the motion to compel arbitration.

The totality of the circumstances demonstrates that Defendants did not act inconsistently with the right to arbitrate. Although Defendants did not explicitly raise arbitration as an affirmative defense in their answers, they reserved the right to raise additional defenses as they became known throughout the proceedings. *See* ECF No. 9 at 21; *see also* ECF No. 10 at 21. Indeed, shortly after learning of their right to arbitrate and before filing discovery responses, Defendants raised the issue with Plaintiffs. Even if Defendants did not reserve their right to raise additional defenses, a technical failure to plead a defense is not fatal. *See DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987). "[B]etter housekeeping" may have made Defendants aware of their right to arbitrate earlier, *see id.*, but the five-month delay between their answer filing and their assertion of a right to arbitrate did not display a gross lack of diligence. *See Cooper v. Asset Acceptance LLC*, 532 F. App'x 639, 640, 642 (7th Cir. 2013) (affirming a district court's order granting a motion to compel arbitration where the moving party filed its motion six to seven months after the party removed the case to federal court); *Skyline Restoration, Inc. v. First Baptist Church*, No. 17C1234, 2017 WL 6570077, at *2 (N.D. Ill. Dec. 21, 2017) (finding "modest" a five-month delay between the filing of a motion to compel arbitration and the complaint).

17

The circumstances also do not show prejudice. Although the parties participated in some litigation, such litigation merely involved setting an initial schedule for the case. No substantive ruling has been made and no trial date has been set. Also, the parties have participated in minimal discovery, and this court stayed discovery pending the issuance of this order. *See Cooper*, 532 F. App'x at 641 (noting that participation in minimal discovery weighs against a finding of implied waiver). At the first instance a substantive motion was filed—Plaintiffs' motion for class certification—Defendants asserted their right to arbitration in response. The circumstances thus weigh against a finding that Defendants impliedly waived their right to arbitrate.

Plaintiffs also seek leave to challenge the arbitration provision as unconscionable under Wisconsin law. They contend further discovery is needed to present that further argument against enforceability of the provision. Given the fact that Defendants did not promptly move to compel arbitration, Plaintiffs will be allowed to supplement their unconscionability argument, though it is unclear whether discovery should be allowed.

For now, I conclude that the record is unclear as to whether Plaintiffs assented to the terms of the note either directly or by authorizing Prosper Marketplace to sign the notes on their behalf as their attorney-in-fact. The evidence is also insufficient to establish that WebBank assigned the notes to Prosper, which in turn transferred them to Velocity. The chain of title to the debts and notes evidencing them should be clarified by Velocity. *See Thomas v. Asset Acceptance, LLC*, No. 12 C 7360, 2013 WL 4538362, at *4 (N.D. Ill. Aug. 27, 2013). Accordingly, the Clerk is directed to set this matter on the court's calendar for further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this  27th  day of December, 2018.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court