# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JACQUELYN A. VANDEHEY and
MICHELLE L. O'LAIRE, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

v.                                                      Case No. 18-C-144

ASSET RECOVERY SOLUTIONS, LLC,
VELOCITY INVESTMENTS LLC, and
JOHN AND JANE DOES 1 THROUGH 25,

        Defendants.

## DECISION AND ORDER

Plaintiffs Jacquelyn A. Vandehey and Michelle L. O'Laire, on behalf of themselves and all others similarly situated, filed a complaint against Defendants Asset Recovery Solutions, LLC (ARS), Velocity Investments LLC (Velocity), and John and Jane Does Numbers 1 through 25, alleging that the defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, by sending debt collection letters to Plaintiffs that sought to collect the balance of consumer loans on which they had defaulted. Because the loans were charged off by the original creditor and were no longer accruing interest, Plaintiffs claim that the letters' statement that the "[t]he account balance may periodically increase due to the addition of accrued interest," ECF Nos. 1-1, 1-2, is false, deceptive, and misleading and fails to state the amount of the debt in violation of §§ 1692e and 1692(g)(a)(1). Before the court are the defendants' motion to compel arbitration and Plaintiffs' motion for class certification. In a previous order and subsequent telephone conference, the court withheld ruling on these motions, directed the defendants to supplement the record, and

allowed Plaintiffs thirty days to respond to the supplement. Plaintiffs did not file a response. In light of the supplemented record and this court's past order, and for the reasons that follow, the defendants' motion to compel arbitration will be granted and Plaintiffs' motion for class certification will be denied.

**BACKGROUND**

Plaintiffs allege that they received letters from ARS that sought to collect a debt on behalf of Velocity. The letters, which are attached as exhibits to the complaint, list a total balance due and state in part: "[t]he account balance may periodically increase due to the addition of accrued interest." ECF Nos. 1-1, 1-2. Plaintiffs claim that these letters are false, deceptive, and misleading and fail to state the amount of the debt in violation of the FDCPA because the balances are static and Velocity has not added and does not intend to add interest to the debts.

Plaintiffs have moved for class certification, and they seek to represent Wisconsin residents who received similar letters from ARS mailed between January 29, 2017, and February 19, 2018, that contained the phrase: "[t]he account balance may periodically increase due to the addition of accrued interest." Shortly after Plaintiffs filed a motion for class certification, ARS and Velocity filed a motion to compel arbitration, claiming that Plaintiffs executed promissory notes that contain arbitration and class-waiver provisions. The notes were for personal loans from WebBank, a Utah-chartered industrial bank, who transferred them to Prosper Funding, LLC (Prosper), who then sold the debts to Velocity. Galaxy Capital Recoveries, LLC, a company that serviced Velocity's debts, authorized ARS to service Plaintiffs' debts.

The notes provide that all claims "arising from or related to [the notes] . . . shall be resolved, upon the election of you or me, by binding arbitration," ECF No. 19-1 at ¶ 18(a)(iii), (b); ECF No.

19-2 at ¶ 18(a)(iii), (b), that "arbitration under this arbitration agreement will take place on an individual basis; class arbitrations and class actions are not permitted," and that "YOU AND I AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN OUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." ECF No. 19-1 at ¶ 18(b), (f); ECF No. 19-2 at ¶ 18(b), (f). The notes also provide:

> **YOU AND I AGREE THAT, BY ENTERING INTO THIS NOTE, THE PARTIES ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION. YOU AND I ACKNOWLEDGE THAT ARBITRATION WILL LIMIT OUR LEGAL RIGHTS, INCLUDING THE RIGHT TO PARTICIPATE IN A CLASS ACTION, THE RIGHT TO A JURY TRIAL, THE RIGHT TO CONDUCT FULL DISCOVERY, AND THE RIGHT TO APPEAL (EXCEPT AS PERMITTED IN PARAGRAPH(e) OR UNDER THE FEDERAL ARBITRATION ACT).**

ECF No. 19-1 at ¶ 18(h); ECF No. 19-2 at ¶ 18(h).

The notes define "WebBank" as itself, any person servicing the notes, any subsequent holders of the notes or any interest in the notes, any person servicing the notes for a subsequent holder of the notes, and each of their respective parents, subsidiaries, affiliates, predecessors, successors, and assigns, as well as the officers, directors, and employees of each of them. ECF No. 19-1 at ¶ 18(a)(ii); ECF No. 19-2 at ¶ 18(a)(ii). Neither plaintiff exercised the option of rejecting the arbitration and class-waiver provisions that was available under the notes. *See* ECF No. 19-1 at ¶ 18(i); ECF No. 19-2 at ¶ 18(i).

In a Decision and Order dated December 27, 2018, the court found that the record was insufficiently developed to allow the court to definitively conclude that Plaintiffs are bound by the terms of the notes they allegedly executed or that the defendants are entitled to enforce those

provisions. *See Vandehey v. Asset Recovery Solutions, LLC*, No. 18-C-144, 2018 WL 6804806, at *1 (E.D. Wis. Dec. 27, 2018). More specifically, the court noted that the record is unclear as to whether Plaintiffs assented to the terms of the notes either directly or by authorizing Prosper Marketplace, Inc. (PMI), which acts as Prosper's agent in servicing loans obtained through Prosper's online credit platform, to sign on their behalf as attorney-in-fact. *Id.* at *8. The court also noted that the evidence was insufficient to establish that WebBank assigned the notes to Prosper, which in turn transferred them to Velocity. *Id.* The court therefore withheld ruling on the defendants' motion to compel and indicated that the parties would have the opportunity to supplement the record. *Id.*

During a January 7, 2019 hearing, O'Laire agreed to arbitrate her claims and the court stayed the case as to her claims pending arbitration. Also during the hearing, the court directed the defendants to supplement the record with respect to the issues identified in its December 27, 2019 order, and Plaintiffs were given thirty days to respond after the filing of the supplement. On February 15, 2019, the defendants supplemented the record. Plaintiffs did not file a response.

**ANALYSIS**

**A. Loan Application Process**

The defendants' supplement includes an affidavit from Keith Walch, Director of Recovery at PMI, who explains the process by which individuals can apply for a loan through Prosper Marketplace, which is an online credit platform (Platform) that Prosper operates to offer access to, among other things, unsecured personal loans in the form of promissory notes. *See* ECF No. 40-1. When applying for a loan using the Platform, an individual is guided through a series of webpages and is required to agree to various legal contracts along the way, including Terms of Use and a

Borrower Registration Agreement. *Id.* at ¶ 7. The applicant begins by identifying the desired loan amount, the purpose of the loan, and the applicant's credit quality. *Id.* at ¶ 8. The next step is to enter various personal and financial information, including employment status and income. *Id.* at ¶ 10. Before applicants can view their loan offers, they must confirm that they agree to the Credit Report Authorization, Terms of Use and Electronic Consent, Data Terms of Use, WebBank and Prosper Privacy Policies, and Prosper's TCPA Communication Policy. *Id.* at ¶ 11.

The Terms of Use in place when Plaintiffs applied for their loans included the following language:

> **Please carefully review these terms and conditions of use before using this site or accessing any data thereon. Any use of this website creates a binding agreement to comply with these terms and conditions. If you do not agree to these terms without limitation or exclusions, you should exit this site immediately.**

*Id.* at ¶ 14. The Terms of Use include a provision whereby the applicant must consent to do business electronically. *See id.* at ¶ 15. A "Scope of Consent" provision states: "Your consent to receive Communications and do business electronically, and our agreement to do so, applies to all of your interactions and transactions through the Prosper platform, whether or not you place a listing or bid, or act as a group leader." *Id.* An "Assignment" provision states: "In addition, you further acknowledge that your consent to . . . do business on or through the Prosper platform is assignable to any entity that owns a (i) Promissory Note evidencing a loan you obtained through the Prosper platform." *Id.* at ¶ 16. The applicant cannot proceed with or complete the loan application without confirming agreement to the Terms of Use. *Id.* at ¶¶ 17–18.

After agreeing to the aforementioned documents, including the Terms of Use, applicants are notified whether they qualify for a loan and, if so, what options are available. *Id.* at ¶ 19. After

selecting a loan option and entering more personal information, including contact information, employment status, and social security number, the applicant is presented with a template Truth in Lending Disclosure Statement (TILD Statement), and after the TILA Statement is generated, the applicant is required to confirm that he or she agrees by electronic signature to the Borrower Registration Agreement. *Id.* at ¶¶ 19–22. The applicant cannot proceed with or complete the loan application without confirming agreement to the Borrower Registration Agreement. *Id.* at ¶¶ 24–25.

The Borrower Registration Agreement in place when Plaintiffs applied for their loans explains the relationships between the different legal entities involved in originating and servicing loans obtained through Prosper's Platform. *See id.* at ¶ 28; ECF No. 40-2 at 9; ECF No. 40-3 at 9. The Agreement explains that all loans originated through the Platform are made by WebBank and that PMI services WebBank in connection with the origination of such loans. ECF No. 40-2 at 9. The Agreement further explains that Prosper services all loans made through the Platform and that Prosper engages third parties, including PMI, to act as its agents in performing such servicing. *Id.* The Agreement also explains that the Platform connects applicants who wish to obtain loans with investor members who wish to fund them. *Id.* To receive a loan, an applicant must submit a loan listing through the Platform that requests an amount and interest rate. *Id.* To become a loan, the applicant's listing must receive aggregate funding commitments from Prosper investor members that equal or exceed the minimum funding amount applicable to the applicant's listing. *Id.* If a listing receives sufficient funding commitments, then WebBank will originate a loan in an amount equal to the total amount of the commitments. *Id.*

The Agreement contains arbitration and class-waiver provisions that are nearly identical to the provisions in Plaintiffs' notes; the only difference is paragraph numbering. *See* ECF No. 40-1

6

at ¶ 27; ECF No. 40-2 at 14–15, 22–23; ECF No. 40-3 at 14–15, 22–23. Also like the notes, the Agreement contains an option to reject the arbitration and class-waiver provisions. ECF No. 40-2 at 15, 23; ECF No. 40-3 at 15, 23. The Agreement also contains, in bold font, an electronic transactions provision that incorporates the Terms of Use, includes express consent to electronic transactions and disclosures, and includes agreement "that each of (a) this Agreement and (b) any Promissory Note in the form set forth on the attached Exhibit A that we sign on your behalf, may comprise a 'transferable record' for all purposes under the Electronic Signatures in Global and National Commerce Act and the Uniform Electronic Transactions Act." ECF No. 40-2 at 15. The Agreement has a limited power-of-attorney provision that reads in part:

> **If your listing receives sufficient investor commitments to fund, and you do not withdraw your listing prior to expiration of the listing period, you hereby authorize each of Prosper and PMI to act as your Attorney-in-Fact to execute a Promissory Note in the form set forth on the attached Exhibit A on your behalf in favor of [Web]Bank.**

*Id.* The template Promissory Note to which the Agreement refers is attached to the Agreement as Exhibit A. *See id.* at 15–20. While the format of the Platform has changed over time, the requirement that an applicant agree to the Borrower Registration Agreement before the loan application can be completed was in place when Plaintiffs applied for their loans. ECF No. 40-1 at ¶¶ 35–36.

Once the application is completed and the loan is approved, the applicant, who then becomes a borrower, receives a completed Promissory Note and final TILD Statement with the deposit of funds. *Id.* at ¶¶ 21, 38.

**B. Plaintiffs' Loans**

The record demonstrates that Plaintiffs applied for and received loans from WebBank using the Prosper Platform. Notably, Plaintiffs do not deny that they applied for loans through the

7

Platform or that they ultimately received the funds from their loans. In November 2015, O'Laire executed a Borrower Registration Agreement under loan number 503241. *Id.* at ¶ 58. In December 2015, Vandehey executed a Borrower Registration Agreement under loan number 539916. *Id.* at ¶ 45. To obtain their loans through the Platform, Plaintiffs were required to agree to the Terms of Use and the Borrower Registration Agreement. *Id.* at ¶¶ 48, 61. Plaintiffs were also required to create a unique email and password to complete the loan application process. *Id.* at ¶¶ 46, 59. Through their online accounts, Plaintiffs could access various legal agreements and disclosures, including the Terms of Use as well as their Borrower Registration Agreements and Promissory Notes. *Id.* at ¶ 44, 47, 60.

Plaintiffs' completion of the online loan application process and assent to the Terms of Use and Borrower Registration Agreement resulted in PMI signing Promissory Notes on their behalf as attorney-in-fact, as agreed under paragraph 25 of the Borrower Registration Agreement. ECF No. 40-1 at ¶¶ 50, 63; ECF No. 40-2 at 15, 25; ECF No. 40-3 at 15, 25. Agreeing to both the Borrower Registration Agreement and the Promissory Notes meant that Plaintiffs twice agreed to the arbitration and class-waiver provisions, which were present in both documents. After the notes were executed, WebBank originated Plaintiffs' loans. ECF No. 40-1 at ¶¶ 51, 64. While the court previously determined that the record appears to verify that Velocity purchased Plaintiffs' loans from Prosper, *see Vandehey*, 2018 WL 6804806, at *5, and the evidence that led the court to that conclusion has been resubmitted and sufficiently supplemented, *see* ECF No. 40-1 at ¶¶ 56, 69; ECF No. 40-4 at 2, 216, 246, 514; ECF No. 40-5 at 2–5, the court expressed concern about the whether the record evidence established Prosper's interest in the loans. *Vandehey*, 2018 WL 6804806, at *6. Specifically, the court noted that the Certificates of Loan Sale proffered to establish Prosper's

interest in the loans were "not in the form of a sworn affidavit or declaration, and they do not constitute contemporaneous records of the business of WebBank." *Id.*

The defendants' supplement cures this deficiency. Keith Walch attests in a sworn affidavit that "WebBank transferred, assigned, and conveyed to Prosper Funding LLC and its successors and permitted assigns, all right, title and interest WebBank held in [Plaintiffs] loan[s]." ECF No. 40-1 at ¶¶ 52, 65; ECF No. 40-4 at 3, 217, 246, 514. According to Walch, WebBank transferred Vandehey's loan to Prosper on or about December 29, 2015, and O'Laire's loan to Prosper on or about November 19, 2015, which the Certificates of Loan Sale and attached exhibits reflect. ECF No. 40-1 at ¶¶ 52, 65; ECF No. 40-4 at 3, 217, 246, 514. Walch also attests that Prosper maintained Plaintiffs' loan documents as business records both as WebBank's servicer and after assignment of the loans from WebBank. ECF No. 40-1 at ¶¶ 54, 67. Walch further attests that Prosper maintained these documents on behalf of WebBank in the regular course of business and that the documents were made at or near the time of the occurrence of the matters set forth by them. *Id.* at ¶¶ 53, 55, 66, 68. These documents are the same documents that Velocity received after it purchased Plaintiffs' loans. *See* ECF No. 19-7 at ¶ 4; *see also* ECF Nos. 19-1–6. This record evidence is sufficient to establish chain of title.

The court previously determined that, "[i]f in fact Plaintiffs accessed Prosper's online credit platform, created a listing for a loan, and completed the process for obtaining a loan from WebBank, then the notes representing the loans they obtained would be presumptively valid and enforceable against them" and that, "[a]ssuming PMI's electronic signatures as attorney-in-fact for Plaintiffs are valid and enforceable, Plaintiffs are bound by the terms of the notes PMI signed on their behalf." *Vandehey*, 2018 WL 6804806, at *5. The supplemented record confirms that each of these predicates is met and that Plaintiffs are bound by the arbitration and class-waiver provisions in their

9

notes; the same provisions were present in the Borrower Registration Agreement, to which Plaintiffs also agreed. As a result, Defendants' motion for compel arbitration will be granted and Plaintiffs' motion for class certification will be denied.

**C. Unconscionability**

In their brief in opposition to the defendants' motion to compel arbitration, Plaintiffs requested leave to conduct discovery as to an unconscionability defense against enforcement of the arbitration agreement. *See* ECF No. 25 at 8 n.1. In the court's December 27, 2018 order, the court stated that "Plaintiffs will be allowed to supplement their unconscionability argument, though it is unclear whether discovery should be allowed." *Vandehey*, 2018 WL 6804806, at *8. Plaintiffs have not supplemented their unconscionability argument or otherwise responded to the defendants' supplement. The court will therefore examine the argument provided in Plaintiffs' brief in opposition to the defendants' motion to compel arbitration.

Plaintiffs' first concern is that, according to the notes, PMI was both WebBank's servicer and the entity upon which demands for arbitration must be served. From these facts, Plaintiffs claim that PMI "was a double agent, simultaneously representing the borrower and the lender in the same transaction." *Id.* at 7. But that PMI serviced WebBank's loans and received arbitration notices on WebBank's behalf does not means that PMI engaged in self-dealing or somehow represented Plaintiffs such that a conflict of interest arose. PMI's only representation of Plaintiffs was PMI's narrow role as attorney-in-fact for Plaintiffs in the execution of Promissory Notes in the form attached to the Borrower Registration Agreements to which Plaintiffs assented. Plaintiffs agreed to conduct business electronically and to have PMI sign Promissory Notes on their behalf. This limited power-of-attorney provision facilitates the operation of Prosper's Platform and is likely a common phenomenon given the amount of commercial activity that is conducted electronically.

Plaintiffs second concern involves the copyright notations on the Promissory Notes. Under PMI's signature as attorney-in-fact on Vandehey's note, which is dated December 29, 2015, is the following copyright notification: "Copyright © 2005-2016 Prosper Marketplace, Inc. All rights reserved." ECF No. 40-2 at 25. O'Laire's note, which is dated November 19, 2015, contains a similar copyright notification extending to the year 2017. ECF No. 40-3 at 25. Copies of Plaintiffs' notes that were included as attachments in email correspondence between counsel include copyright notifications dated "2005-2018." ECF No. 27 at ¶ 18; ECF No. 27-7 at 10, 17. Plaintiffs describe these anachronisms as "a little curious—if not outright suspicious." ECF No. 25 at 7. Exactly why Plaintiffs' notes, which were electronically signed in 2015, bear future copyright dates of 2016 and 2017 (in supplement) as well as 2018 (in correspondence) is unclear. These dates could be the result of an auto-update or other feature in the software used to generate, access, export, and/or print the notes such that the copyright year reflects the date last accessed, for example. That the years are software-related is supported at least in part by the fact that other Prosper documents in the record also contain future copyright dates. *See, e.g.*, ECF No. 40-2 at 7–8; ECF No. 40-3 at 7–8. The defendants' supplement contains no explanation for why the copyright notations on the notes do not match the 2015 signature dates.

While the court agrees with Plaintiffs that the future copyright dates in their notes are curious, this mystery does not change the court's finding that Plaintiffs obtained loans through the Platform and assented to the provisions in the Terms of Use, Borrower Registration Agreement, and Promissory Note in their completion of the loan application process given Walch's affidavit and the other record evidence, including the final TILD Statements that Plaintiffs received, which were dated one day prior to PMI's attorney-in-fact note signatures, *see* ECF No. 40-2 at 8; ECF No. 40-3 at 8, and the change-of-ownership notifications, which confirm that Plaintiffs ultimately received

11

loans. *See* ECF No. 40-5. Plaintiffs are accordingly bound by the arbitration and class-waiver provisions. Aside from PMI's "multiple roles," a claim the court has addressed, Plaintiffs offer no indication of the types of information they would seek or hope to obtain with further discovery that would provide a basis for an unconscionability defense. Plaintiffs' failure to supplement their argument or respond to the defendants' supplement suggests that they do not believe such discoverable information exists. Plaintiffs' request for leave to conduct further discovery is therefore denied.

## CONCLUSION

For the foregoing reasons, ARS and Velocity's motion to compel arbitration (ECF No. 18) is **GRANTED** and Plaintiffs' motion to certify class (ECF No. 15) is **DENIED**. The court previously stayed the case as to O'Laire pending arbitration of her claims. ECF No. 39. Given the court's resolution of ARS and Velocity's motion to compel arbitration, Vandehey's claims shall be submitted to binding arbitration and the case is **stayed and administratively closed** pending completion of arbitration proceedings. Plaintiffs shall notify the court within 30 days after arbitration proceedings are completed as to each plaintiff.

**SO ORDERED** this   24th   day of March, 2019.

                                                       s/ William C. Griesbach
                                                     William C. Griesbach, Chief Judge
                                                     United States District Court